UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA


**BEN SCOTT**                                                   **CIVIL ACTION**

**VERSUS**                                                      **NO. 08-1262**

**VENETIA T. MICHAEL, WARDEN**              **SECTION "C" (6)**


## ORDER AND REASONS

Before the Court is a petition for habeas corpus by Ben Scott ("Petitioner"), filed *pro se*,

pursuant to 28 U.S.C. § 2254.  Petitioner seeks relief from his conviction of first degree robbery

in violation of La. Rev. Stat. § 14:64.1, for which he was sentenced to forty years imprisonment

at hard labor.   For the reasons set forth below, the petition is DENIED.

### I. STATEMENT OF THE CASE

### A. BACKGROUND FACTS

The Court of Appeal for the Fifth Circuit, State of Louisiana, set forth the relevant facts

in its opinion on direct appeal as follows:

> At approximately 10:20 p.m. on January 30, 2004, Sandi Roe was working
> at the Shell gas station on Lapalco and Woodmere when a man entered the store
> and announced he was robbing the store.  Ms. Roe saw the man's hand resting on
> what she believed to be the butt of a gun in his waistband.  The man handed Ms.
> Roe a clear plastic bag and told her he wanted cigarettes, the brands of which he
> specified, and lighters.   He also demanded money from the register, which Ms.

1

Roe dumped into the bag.  He then instructed Ms. Roe to give him the bag, and existed the store.

After defendant left, Ms. Roe called 911 from the store phone.  When there was no answer, she called 911 from her cell phone and went outside where she observed defendant getting into a small dark blue Toyota-like truck.  While Ms. Roe was outside, a customer, Cary Singletary, arrived.  Ms. Roe told Mr. Singletary that she had just been robbed and pointed out the truck in which the perpetrator was leaving.  Mr. Singletary followed the truck until the truck became stuck in the mud.  Mr. Singletary then obtained the truck's license plate number and returned to the Shell station, at which time the police were arriving on the scene.

As Mr. Singletary arrived at the Shell station, he again spotted the truck. The police pursued the truck until it crashed in the Woodmere subdivision.  The perpetrator fled the truck and was apprehended following a brief foot pursuit. Ms. Roe was subsequently brought to the scene of the apprehension here she positively identified the suspect as the person who robbed her at the Shell station. Additionally, Mr. Singletary identified the suspect at the scene of the apprehension as the person driving the truck he followed as it was leaving the Shell station.

Defendant's truck was secured.  An inventory of its contents revealed scattered cigarettes, lighters, and cartons of cigarettes and currency inside a cleaar garbage bag.  Ms. Roe identified these items as things taken from the Shell station during the robbery.  The items had a value of $1,497.98.

After his arrest, defendant gave a statement to police admitting his involvement in the robbery.  At trial, defendant testified he went to the Shell station on the night of the incident to buy gas and a drink.  He stated he parked his truck and was in the process of figuring out how much money he needed and how much he had when a man armed with a gun approached his truck and carjacked him.  Defendant stated the man told him where to drive and then jumped out of the truck when it got stuck in the mud.  Defendant explained he ran from the police because of his felony record.  He further testified he gave his inculpatory statement out of fear and intimidation.

*State v. Scott*, 939 So.2d 462,465-466.

## B. PROCEDURAL REVIEW

### 1. CUSTODY REQUIREMENT

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2241 *et seq.* ("AEDPA").  A habeas petitioner must be in custody in order for a federal court to consider a petition for habeas corpus relief.  28 U.S.C. §2241(c); 28 U.S .C. § 2254(a).

Physical incarceration satisfies the custody requirement. *Maleng v. Cook,* 490 U.S. 488, 491 (1989). Here, Petitioner is currently incarcerated for the conviction he is attacking. Accordingly, the custody requirement is satisfied.

## 2. VENUE

Under 28 U.S.C. §2241(d), venue lies in the district in which the Petitioner is incarcerated or the district from which his conviction or sentence was obtained. In this case, Petitioner was convicted and sentenced in Jefferson Parish, which falls within the Eastern District of Louisiana. Accordingly, this is the proper venue for Petitioner's claims.

## 3. TIMELINESS

The state concedes that the petition was timely filed. After a review of the record, this Court is satisfied that the petition was filed in a timely manner.

## 4. EXHAUSTION

Exhaustion of adequate state remedies is a requirement necessary for the invocation of federal habeas corpus review under 28 U.S.C. § 2254. *Prieser v. Rodriguez*, 411 U.S. 475, 483 (1973); 28 U.S.C. § 2254(b)(1). To satisfy the exhaustion requirement, all of the factual claims and legal theories presented for federal habeas review must have been raised in a procedurally proper manner to the state's highest court, here the Louisiana Supreme Court. *See e.g., Anderson v. Harless*, 459 U.S. 4, 6 (1982); *Yohey v. Collins*, 985 F.2d 222, 226 (5th Cir.1993); *Rose v. Lundy*, 455 U.S. 509, 518 (1982).

This Court allowed Petitioner to amend his §2254 petition on September 30, 2010. Rec. Doc. 28. The amended petition focuses on the propriety of the denial of the defendant's motion to suppress identification and statements by the appellate court, issues which the Court found

3

were part and parcel of those raised on direct appeal and in his original petition filed with this Court. Rec. Doc. 29. It also appears to this Court that the state courts fully addressed the arguments made by Petitioner in his amended petition.[1]  Otherwise, it appears that the State concedes that Petitioner's claims are properly exhausted, and this Court finds that Petitioner's claims are exhausted as required by AEDPA.  Petitioner presents four claims for relief in his federal habeas petition. Each of these claims was presented to the Louisiana Supreme Court in Petitioner's brief on direct appeal. Accordingly, Petitioner has satisfied AEDPA's exhaustion requirement.

## C. STANDARD OF REVIEW

The AEDPA provides standards of review for questions of fact, questions of law, and mixed questions of fact and law at 28 U.S.C. § 2254(d)(1) and (2).[2]  Questions of law and mixed questions of fact and law are reviewed under the standard set forth in § 2254(d)(1), and pure

---

[1]Otherwise, this Court recognizes that new claims would be procedurally defaulted due to non-exhaustion.

[2]Section 2254(d) provides as follows:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

    (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

4

questions of fact are reviewed under § 2254(d)(2).  A decision is "contrary to" clearly established federal law if the state court applies a rule different from governing law set forth in Supreme Court caselaw.  *Bell v. Cone*, 535 U.S. 685, 694 (2002).  An "unreasonable application" results when the state court correctly identifies the governing rule but applies it in a way which is unreasonable in light of the facts of the case.  *Id.*  A federal habeas court making an inquiry for "unreasonable application" should determine whether the state court's application of federal law was objectively unreasonable.  *Williams v. Taylor*, 529 U.S. 362, 409 (2000).  Mere disagreement with the state court is not sufficient to warrant habeas relief.  *Orman v. Cain*, 228 F.3d 616, 619 (5th Cir. 2000).

Furthermore, there is a presumption that a state court's findings of fact are correct and the petitioner bears the burden of rebutting the presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e).   A federal court will defer to the state court's decision unless it was "based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."  *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000)(quoting 28 U.S.C. § 2254(d)(2)).

### D. PROCEDURAL HISTORY

Petitioner was originally charged by bill of information with one count of armed robbery while armed with a handgun in violation of La. Rev. Stat. 14:64.3 and one count of aggravated flight from an officer in violation of La. Rev. Stat 14:108.1(C).  On February 25, 2004, Petitioner entered a plea of not guilty and counsel was appointed.  La. Rec. Vol. 4 at 1. On March 28, 2005, a hearing was held on Petitioner's motion to suppress the confession, tangible evidence, and identifications.  La. Rec. Vol. 4 at 166.  Petitioner did not testify at the hearing.  *Id.* The trial

court denied all motions.  La. Rec. Vol. 4 at 240-41.  The State amended the charges to one

count of first degree robbery in violation of La. Rev. Stat. 14:64.1.  Petitioner entered a plea of

not guilty to the amended charged.  All motions to suppress were denied and trial commenced on

March 29, 2005.  La. Rec. Vol. 4 at 15-18.  Petitioner testified at trial.  *See generally*, La

Rec.Vol. 5 at 487 – Vol. 6 at 545.

The jury returned a verdict of guilty on March 30, 2005.  La. Rec. Vol. 4 at 108.

Petitioner made a *pro se* motion  for post-verdict judgment of acquittal on May 20, 2005, which

the trial court denied on August 12, 2005, at which time the state filed a multiple bill and the

court sentenced him to 40 years imprisonment.  La. Rec. Vol. 4 at 109, 159-161.  On that same

date, the Petitioner, through counsel, filed a motion to reconsider sentence and a motion for

appeal.  La. Rec. Vol. 4 at 162-64.  On March 21, 2006, Petitioner through counsel filed an

appellate  brief with the Louisiana Fifth Circuit asserting essentially four assignments of error:

(1)(2) the identifications and statement were illegally obtained; (3) the evidence was insufficient

to support the conviction; and (4) there was patent error in the sentencing.  La. Rec. Vol. 2, Tab

1, Exh A at 12; La. Rec. Vol. 6, Tab 5.  Petitioner filed a *pro se* supplemental brief April 17,

2006.  La. Rec. Vol. 2, Tab 1.  The state filed a brief in opposition April 27, 2006.  La. Rec. Vol.

2, Exh. B at 31.   Petitioner filed a writ of mandamus with the appeals court to order the Clerk of

Court for the 24th Judicial District to provide him with the record to assist him in filing a *pro se*

supplemental brief.  La. Rec. Vol. 2, Tab 1 at 60.  On May 11, 2006, the court of appeals issued

an order allowing Petitioner until May 25, 2006,  to file a supplemental brief.[3]  La. Rec. Vol. 2,

_____

[3] It would appear from the record that no supplemental brief was filed.  The trial court
denied Petitioner's motion to reconsider sentence but granted his motion to quash the multiple
bill on June 22, 2007.  La. Rec. Vol. 7 at 72, 79.

Tab 1 at 63.  On July 25, 2006, the state court of appeals affirmed Petitioner's conviction and remanded with instructions to rule on Petitioner's motion for reconsideration of sentence.  *State v. Scott*, 939 So.2d 462 (La. App. 5th Cir. 2006).

Petitioner filed a writ application on August 10, 2006 with the Louisiana Supreme Court. La. Rec. Vol. 8 at Tab 8.  The writ sought relief on four claims: (1) & (2) the identifications and statement were illegally obtained; (3) the evidence was insufficient to support the conviction; and (4) the court of appeal erred when it did not order the clerk to make records available for Petitioner to file a *pro se* brief on appeal.  La. Rec. Vol. 8, Tab 8 at ii.  The writ was denied on March 30, 2007.  *State v. Scott*, 953 So.2d 61 (La. 2007).

Petitioner filed this petition in this Court on February 26, 2008 raising the same claims denied by the Louisiana Supreme Court on March 30, 2007.[4]  After this petition was filed, Petitioner  filed an application for post-conviction relief in state court on March 23, 2009.  La. Rec. Supp. Vol. 1 at Tab 10.  In the state court application, Petitioner made three claims of error: (1)  the trial court allowed the prosecution to introduce unsupported character evidence during closing argument; (2) the in-court identifications were based on identifications on the scene; and (3) ineffective assistance of counsel based on alleged failure to investigate and failure to object to the prosecution's prejudicial closing argument.   La. Rec. Supp. Vol. 1 at Tab 10.  That application was denied by the state trial court on April 8, 2009.  La. Rec. Supp. Vol. 1 at Tab 11. Petitioner filed a writ on May 11, 2009 with the state court of appeal based on the same three grounds, which was denied on June 11, 2009.  La. Rec. Supp. Vol. 1 at Tabs 12 & 13.  Petitioner

---

[4]Contrary to Petitioner's apparent understanding, the State's opposition was timely filed. Rec. Doc. 13.  The State was granted an extension of time to file.   Rec. Doc. 10.

filed a writ application with the Louisiana Supreme Court on July 22, 2009, based on the same

three claims, which was denied on April 30, 2010.[5]  La. Rec. Supp. Vol. 1 at Tabs 15 & 16.

## IV. PETITIONER'S CLAIMS

### A. IDENTIFICATIONS

Petitioner first claims error in the trial court's denial of his motion to suppress both the

identifications made by Roe and Singletary as suggestive and with a high likelihood of

misidentification.  The Louisiana Fifth Circuit opinion on direct appeal addressed this issue.  In

so doing, it acknowledged that, in general, one-on-one identifications are not favored.  It also

recognized the applicability of  *Manson v. Brathwaite*, 432 U.S. 98 (1977) in determining

whether the identification procedures used are sufficiently fair and reliable to allow the

identification to be used.  *State v. Scott*, 939 So.2d at 466.   In turn, *Manson* directs the Courts to

consider factors to assess reliability that include: (1) the witness' opportunity to view the

criminal at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of his

prior description of the criminal; (4) the level of certainty demonstrated at the confrontation; and

(5) the time between the crime and the confrontation.  432 U.S. at 114-16.  The Louisiana Fifth

Circuit found as follows:

> In the present case, the victim testified she was brought to the scene where
> defendant was apprehended and asked whether she could identify the suspect as
> the perpetrator.  The victim remained in the back seat of the police car while the
> deputy rolled down her window.  She stated she observed defendant standing at a
> distance, accompanied by a police officer, with his hands behind his back and
> headlights shining on him.  The victim made a positive identification of defendant
> as the perpetrator within thirty minutes of the robbery.
> The customer, Cary Singletary, testified he was asked if he could identify
> the person he saw driving the truck as it left the Shell station.  He went to the

---

[5]It appears that these claims are not included in the Petition before the Court.

scene where defendant was apprehended and saw defendant handcuffed and lying on the ground among several police officers.   Mr. Singletary positively identified defendant as the person driving the truck within five to eight minutes after following the truck.

*State v. Scott*, 939 So.2d at 466-67.

The Louisiana Fifth Circuit found that similar one-on-one identifications have been held not to be suggestive and, in any event, Petitioner failed to show that there was a likelihood of misidentification.  *State v. Scott* 939 So.2d at 467.  Specifically, the Louisiana Fifth Circuit found that Roe was able to get a good look at the perpetrator during the crime, which lasted about eight to ten minutes, and was face to face with him, only partially turning away from him to retrieve what he demanded because she was afraid to take her eyes off of him.  *State v. Scott*, 939 So.2d at 467-68.   It found Singletary was only ten to fifteen feet away from Petitioner, obtained the license plate number, and viewed the Petitioner with his high beam lights of his vehicle for 1 ½ minutes after following the truck for five to eight minutes.   *State v. Scott*, 939 So2d at 468.   It also found that Roe's description of the perpetrator sufficiently matched what was being worn and/or confiscated from Petitioner on the scene, and that her identification took place within thirty minutes of the crime.   Based on these facts, the Louisiana Fifth Circuit found that the identifications were not suggestive nor accompanied with a substantial likelihood of misidentification, and that the trial court did not err in denying the defendant's motion to suppress.   This Court finds no error in this conclusion based on the record before it.

An identification is admissible if in light of all circumstances and after weighing  all factors, including reliability and suggestiveness, there is no substantial likelihood of misidentification.  *Neil v. Biggers*, 409 U.S. 188 (1972); *Amador v. Quarterman*, 458 F.3d 397

(5th Cir. 2006); *State v. Thibodeaux*, 750 So.2d 916, 932 (La. 1999).   The United States

Supreme Court advises that the relevant inquiry is whether the identification procedure was "so

impermissibly suggestive as to give rise to a very substantial likelihood of irreparable

misidentification." *Simmons v. United States*, 390 U.S. 377, 384 (1968); *see also Biggers*, 409

U.S. at 196-97; *Manson*, 432 U.S. at 114.  The Fifth Circuit has established a two-pronged test to

evaluate the admissibility of identifications under *Manson* and *Biggers*: out-of-court

identification procedures violate a defendant's due process rights only if the procedures were (1)

unnecessarily suggestive and (2) unreliable.  *Amador*, 458 F.3d at 414.

In this case, the show-up did include elements supportive of a finding of suggestiveness:

the eyewitnesses were confronted with a single handcuffed individual surrounded by police

officers.  These circumstances alone do not in themselves support a finding that the procedure

was unnecessarily suggestive.

In any event, the reliability of the identification procedure has not been shown to be

unreliable under the circumstances and *Manson*, *supra*.  This Court's discussion of those

elements begins with the recognition that the arguments made by Petitioner were fully presented

to the trial court and jury.

**1. Opportunity to view**

Roe was making coffee at a coffee machine near the door when the perpetrator entered

the Shell station.  La. Rec. Vol. 5 at 379.  He was wearing a hat, a bandanna covering the bottom

part of his face, and sunglasses.  La. Rec. Vol. 5 at 389.  Roe testified that she was face-to-face

with the robber when he demanded money and cigarettes and then she walked around the counter

to start filling the bag he handed her.  La. Rec. Vol. 5 at 389.  The perpetrator followed her

around to the counter and at that point, she partially turned in order to keep her eye on him because she was afraid of what he would do with the gun.  La. Rec. Vol. 5 at 380.  She then pulled out the cash register drawer and dumped it into the bag, at which point she "had one eye on him and one eye grabbing."  La. Rec. Vol. 5 at 381.  After he left and she called 911, she went outside and hid behind a diesel pump to watch him escape.  She testified that she watched him get into the truck and pull off.  La. Rec. Vol. 5 at 382.

Singletary followed the perpetrator in his own vehicle while the perpetrator was driving the truck.  When the truck became stuck in the mud, Singletary stopped his vehicle behind the truck and observed him exit the truck and walk around to ask Singletary for help.  La. Rec. Vol. 5 at 421.  At this point, Singletary testified that the perpetrator's bandanna was no longer covering his face.  La. Rec. Vol. 5 at 422.  Singletary testified that he used the high beams of his vehicle to see Petitioner.  La. Rec. Vol. 5 at 422.  Singletary stayed near Petitioner for a minute and a half, during which period he searched for a pen in his car and write down the license plate number of the truck.  La. Rec. Vol. 5 at 423.

**2. Degree of Attention**

Roe testified that she was paying close attention to the robber because she was "afraid to take [her] eyes off him."  La. Rec. Vol. 5 at 380.  She was being yelled and cursed at, and she believed that the brown object protruding from the perpetrator's waistband was a gun.  La. Rec. Vol. 5 at 379.

While Singletary was following the perpetrator, he was attempting to find a pen and jot down the license plate number of the truck.  He was no casual bystander; his goal in following the truck was to aid the police and, therefore, he was most likely paying a high degree of

attention.

### 3. Accuracy of prior description

The record reflects slight variations in Roe's description of certain items of clothing worn by the perpetrator.[6]  These discrepancies were fully presented to the jury at trial and discussed by the Louisiana Fifth Circuit in its opinion on direct appeal.  *State v. Scott*, 939 So.2d at 467.  During the 911 call, Roe described the perpetrator as wearing a blue checkered shirt, blue jeans, a blue bandanna, a hat, and sunglasses.  La. Rec. Vol. 5 at 404.  At trial she described his clothing during the robbery as a hat, sunglasses, bandanna across the bottom of his face, a light jacket and shirt underneath.  La. Rec. Vol. 5 at 384, 389.   At the time Scott was arrested, she described that he still had on the same jeans with a pullover shirt covering the white t-shirt.  La. Rec. Vol. 5 at 395.  She testified that she could see the black shirt underneath what he was wearing during the robbery, and identified the truck as the same one involved in the robbery.  La. Rec. Vol. 5 at 396-97.   The Louisiana Fifth Circuit found that Roe had told the 911 operator that the robber was wearing "a shirt with a shirt under it," and that "[a] rational tier of fact could conclude the perpetrator shed his outer shirt prior to being apprehended."  *State v. Scott*, 939 So.2d at 467 n. 4.

This Court agrees that the discrepancies in the descriptions of his clothing, and the fact that the perpetrator's face was partially obstructed at times were fully presented to the trial court and the jury at trial, and finds no error in the state court findings.

### 4. Level of certainty

Roe testified that she was sure and had no doubt in her mind that Scott was the person

---

[6]Singletary made no prior description to the police.

who robbed her at the Shell station.  La. Rec. Vol. 5 at 410.  Singletary likewise testified that he was one hundred percent certain that Scott was the person he saw escaping in the truck after the robbery.

### 5. Time between crime and confrontation

The time between the crime and the confrontation, in both cases, was very short.  With Roe, it happened less than thirty minutes after the crime.  La. Rec. Vol. 5 at 398.  Singletary was brought to identify Scott between five and eight minutes after he had chased him.  La. Rec. Vol. 5 at 424.

### 6. Corrupting effect of the suggestive identification procedure

Roe identified Scott when she was in the backseat of a police car and Scott was standing approximately ten feet from the vehicle, illuminated by spotlights and headlights.  He was not wearing a hat, sunglasses, or a bandanna at the time.  He was handcuffed and accompanied by an officer.  La. Rec. Vol. 5 at 395, 408.  Roe asked if she could see what he was wearing underneath his black button-down shirt first.  After she saw it was a white t-shirt, she made a positive identification.  Singletary identified Scott from the backseat of a police car, with Scott outside lying on the ground in handcuffs.

Although show-up procedures should be used with great caution,  this Court finds no error in the state court decisions as to the admissibility of the identification testimony, especially in light of the short span of time between crime and identification.  This Court holds that the state court decision was not contrary to, or an unreasonable application of, clearly established federal law, or otherwise erroneous.

Accordingly, Petitioner's first claim is DENIED.

13

### B. STATEMENTS

In his second claim, Petitioner asserts that his statements to the police were not freely or voluntarily given because they  were coerced due to physical violence, threats, promises, and pain medication given to him at the hospital after his arrest.  In addition to providing a statement, Petitioner accompanied Detective John Carroll to the scene of the arrest where he assisted in uncovering additional pieces of evidence.

The record supports the underlying finding that at the hearing on the motion to suppress the statement, Carroll testified that he took Petitioner to the detective bureau and advised him of his rights, which he waived voluntarily and in writing.  La. Rec. Vol. 4 at 83.  Carroll testified that he was aware that Petitioner was in pain from his injuries and had recently returned from the hospital, but he was unaware that Petitioner was on any type of painkillers.  La. Rec. Vol. 4 at 220-21.  Carroll denied telling Petitioner that he could get him three years, or that he had the District Attorney's number in his cell phone.  La. Rec. Vol. 4 at 222.  Carroll also denied using any physical coercion or threats to obtain a statement.  La. Rec. Vol. 4 at 219.

The trial court denied Petitioner's motion to suppress the statements:

[I]n his responses, he seemed to understand what he was saying.  He was clear about what happened other than all he could remember was that she was a white female; the person that he robbed.  He did go to the scene, was able to tell them where he went.  It all appears that he was in good enough condition to do all of these things, so I believe that it was a voluntary statement.  The police officer indicated that there was no coercion; there was no force, there was none of that kind of thing.

La. Rec. Vol. 4 at 240-41.  After a review of the facts, the Louisiana Fifth Circuit affirmed:

Regarding defendant's claim he was threatened with physical abuse, the interrogating officer testified at the suppression hearing and at trial that defendant waived his rights and agreed to give a statement.  He also testified he did not coerce or threaten

14

defendant or promise him anything in order to get the statements.  No evidence was
presented at the suppression hearing that suggested defendant's statement was given
under threats of physical abuse or promises of leniency.   The only evidence of such
allegations was defendant's trial testimony.  In the present case, the trial court made a
credibility determination and obviously chose to believe the testimony of the
interrogating officer.  We find that the record supports the trial court's credibility
determination.

*State v. Scott*, 939 So.2d at 469.  Petitioner testified at trial that he was still suffering from the

effects of the injuries he received at the hands of the police during arrest and the medication

received for those injuries, and that Carroll pushed him back in his chair.   La. Rec. Vol. 6 at

503-505.

The requirement that a criminal defendant's statement be voluntary in order to be

admissible at trial stems from two constitutional provisions: the Due Process Clause of the

Fourteenth Amendment, which provides that no State shall deprive any person of life, liberty, or

property without due process of law, and the Fifth Amendment privilege against self-

incrimination, which provides that no person shall be compelled in a criminal case to bear

witness against himself.  *Dickerson v. United States*, 530 U.S. 428, 433 (2000).  Any use of an

involuntary statement at a criminal trial is a denial of due process of law, regardless of the other

evidence weighing against the defendant.  *Jackson v. Denno*, 378 U.S. 368, 376 (1964).  The

determination of voluntariness is uninfluenced by the truth or falsity of the confession.  *Id.*  A

confession is voluntary if it is a product of the free and rational choice of the accused.  *United*

*States v. Broussard*, 80 F.3d 1025, 1033 (5th Cir. 1996).

An accused's mental condition, apart from any actual official coercion, does not render a

statement involuntary.  *Colorado v. Connelly*, 479 U.S. 157, 164 (1986).  However, the mental

condition of the accused is a significant factor in the voluntariness analysis.[7]  *Id*.  Indeed, the

Supreme Court has held statements involuntary where the mental condition of the accused was

impaired when accompanied by--but not necessarily caused by--some degree of police

overreaching.

In *Mincey v. Arizona*, 437 U.S. 385 (1978), the interrogation took place while the

defendant was in the hospital recovering from a gunshot wound to his hip, had been administered

painkillers, and had tubes in his throat to prevent him from vomiting.  437 U.S. at 396.  The

Court held that written statements obtained from the defendant violated due process.[8]  The Court

struck down the admission of a statement obtained by a defendant, on medication, who had not

slept or eaten for hours in *Greenwald v. Wisconsin*, 390 U.S. 519 (1968).  In *Blackburn v.*

*Alabama*, the Court held a statement involuntary under the circumstances where the police

became aware of the defendant's mental illness during the course of the interrogation.  361 U.S.

199, 207-08 (1960).

The rationale for requiring police overreaching in order for a statement to be deemed

involuntary is consistent with the state action doctrine of the Fourteenth Amendment.  *Connelly*,

479 U.S. at 165.  There must be some link between the police conduct and the resulting

statement in order for the admission of the statement to violate due process.  *Id*.  Therefore,

---

[7]Other factors include: police coercion, length of interrogation, its location, its continuity, and the defendant's maturity, education, physical condition, and mental health.  *Withrow v. Williams*, 507 U.S. 680, 693 (1993).

[8] "It is hard to imagine a situation less conducive to the exercise of 'a rational intellect and a free will' than Mincey's. He had been seriously wounded just a few hours earlier, and had arrived at the hospital 'depressed almost to the point of coma' . . . He complained to [the detective] that the pain in his leg was 'unbearable.'" *Mincey*, 437 U.S. at 398.

while the mental condition itself need not be caused by official coercion, the police must have

taken advantage of it in some way as to render a statement involuntary.  In *Mincey*, for example,

the interrogating officer ignored the defendant's complaints that he was in great pain and could

not think straight.  437 U.S. at 399.

Federal courts have held that statements made while the accused was in pain and/or under

the influence of painkillers or other narcotics are not involuntary per se.[9]  The fact that Petitioner

was in pain and on medication at the time the statements were made does not in and of itself

make the statements involuntary; nor do Petitioner's uncorroborated assertions that he was

promised a lenient sentence.   Here, the trial court made no finding of fact regarding the police

beating during Petitioner's arrest, noting only that the interrogating officer had testified that

there had been no physical violence during the interrogation.  The interrogation began within

hours from the time he returned to jail after being released from the hospital, approximately

seventeen hours after the beating.

The Louisiana Fifth Circuit decided this issue as follows:

Regarding defendant's claim that his statement was involuntary because he was

---

[9] *See Reinert v. Larkins*, 379 F.3d 76 (3d Cir. 2004) (statement voluntary where it was taken in the hospital soon after defendant underwent abdominal surgery and defendant's physician testified that he was mentally impaired at the time); *United States v. Cristobal*, 293 F.3d 134 (4th Cir. 2002 ) (statement voluntary where defendant was in "soft restraints" in the hospital and had been administered morphine); *United States v. Short*, 947 F.2d 1445 (10th Cir.1991) (statements voluntary where defendant was in pain from serious injuries, on painkillers, handcuffed wrist-to-ankle, and in the presence of his 11-year-old daughter who had been detained and handcuffed); *United States v. George*, 987 F.2d 1428 (9th Cir. 1993) (statement voluntary where defendant was suffering from a heroin overdose); *McCall v. Dutton*, 863 F.2d 454  (6th Cir.1988) (statement voluntary where defendant was bleeding from gunshot wounds and was interrogated while lying on the ground, handcuffed and surrounded by four to eight officers, some with guns drawn), *United States v. Lewis*, 833 F.2d 1380, 1384-85 (9th Cir.1987) (statements voluntary where defendant had been under a general anesthetic).

taking pain medication, the influence of the medication, or the intoxication, must have been of such a degree so as to negate his comprehension and to make him unconscious of the consequences of what he said. Whether intoxication exists and is of a degree sufficient to vitiate the voluntariness of the confession are questions of fact and a trial judge's conclusions on this issue will not be disturbed unless unsupported by the evidence. ...

In the present case, defendant never claimed his medication impaired his ability to understand his rights. Additionally, at no time did defendant claim he did not understand his rights. Defendant's statement shows he was coherent and appropriately answered the questions asked. Nothing in the record suggests defendant's medication resulted in incapacitating intoxication that would vitiate the voluntariness of his confession ...

Based on the foregoing discussion, we find that defendant's statement was freely and voluntarily given, and therefore, the trial court did not abuse its discretion in deying defendant's motion to suppress statement.

*State v. Scott*, 939 So.2d at 469-470 (citations omitted).

There is no dispute that the record contains evidence that Petitioner was injured during arrest and received medical treatment for those injuries prior to the interrogation, and that the interrogating officer was aware of those facts. Those serious circumstances are not those to which law enforcement should aspire. Nevertheless, based on the record before it, this Court finds no error in the state court decision regarding the admission of Petitioner's statements or that the state courts' decision was contrary to, or an unreasonable application of, clearly established federal law, or otherwise erroneous.

Accordingly, Petitioner's second claim is DENIED.

### 3. SUFFICIENCY OF THE EVIDENCE

In his third claim, Petitioner claims that the state produced insufficient evidence to prove each of the elements of the crime beyond reasonable doubt, as required by the Due Process Clause of the Fourteenth Amendment.

A claim of insufficient evidence on habeas review presents a mixed question of law and

fact, which requires a reviewing court to determine whether the state court's denial of relief was contrary to or an unreasonable application of clearly established United States Supreme Court precedent. *Penry v. Johnson*, 832 U.S. 782 (2001). Specifically, the standard of review is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)(emphasis original). The factual findings and credibility determinations of the trial court are entitled to a presumption of correctness. 28 U.S.C. § 2254(e)(1); *United States v. Cyprian*, 197 F.3d 736, 740 (5th Cir. 1999).

In this case, Petitioner was found guilty of first degree robbery in violation of La. Rev. Stat. § 14:64.1, which defines the crime as follows:

> A. First degree robbery is the taking of anything belonging to another from the person of another, or that is in the immediate control of another, by use of force or intimidation, when the offender leads the victim to reasonably believe he is armed with a dangerous weapon.

First degree robbery is a general intent crime. *State v. Watts*, 735 So.2d 866 (La. App. 5th Cir. 2001). Where identity is a key issue at trial, the State is required to negate any reasonable probability of misidentification in order to carry its burden of proof. *State v. Vasquez*, 729 So.2d 65, 69 (La. App. 5th Cir. 1999).

Petitioner bases his claim of insufficiency of evidence on his assertion that the identifications were faulty and that the trial court erroneously instructed the jury to disregard Petitioner's testimony that he had been carjacked. He asserts that the someone else committed the robbery, but admits that he drove his truck away from the Shell station after it was robbed. The Louisiana Fifth Circuit Court of Appeals addressed this claim on direct appeal:

> To prove identification in this case, the state offered the testimony of the

19

victim who described the perpetrator to the 911 operator as a black male approximately five feet five inches tall between the ages of 45-50. She stated he was wearing dark sunglasses, a hat, a blue bandanna, an old blue checkered shirt, and blue jeans, and was carrying a clear white plastic bag. The victim also told the 911 operator the perpetrator was driving a dark blue, kind of beat up, older pickup, small Toyota truck. Defendant was apprehended within minutes of the robbery after fleeing a dark blue older GMC pickup truck. He was wearing a black shirt and black jeans.

The victim testified that she was not good at determining the make and models of vehicles. The state also offered the testimony of the customer, Cary Singletary, who followed the pickup truck as it was fleeing the Shell station. Mr. Singletary testified the victim pointed out the vehicle the perpetrator got into after robbing the store. He stated it was a blue GMC/Chevy truck. Mr. Singletary followed the truck and obtained the license plate number. He testified the driver of the truck exited the truck when it became stuck in the mud and asked him for help. Mr. Singletary stated he was able to view the driver for approximately one and one-half minutes. He described the driver as wearing dark clothing consisting of jeans and a t-shirt, sunglasses, and a bandanna around his neck. Approximately five to eight minutes later, Mr. Singletary positively identified defendant as the driver of the truck he followed.

The license plate of the truck defendant was driving matched that given by Mr. Singletary. Additionally, the truck was registered to defendant's deceased father. Defendant testified he obtained the truck through his father's succession. The truck contained numerous cigarette cartons, loose cigarette packs, cigarette lighters, and money, which were items the victim reported were taken during the robbery. The truck also contained a clear white plastic bag with cartons of cigarettes and lighters. The victim reported to the 911 operator that the perpetrator had a clear white plastic bag. She testified she placed cigarette cartons, lighters, and money into the plastic bag.

Additionally, the state offered the surveillance video of the robbery, which captured the crime in progress, as well as still photographs taken from the video.

Defendant argues this evidence does not prove he was the perpetrator of the crime. He asserts photographs of the robber taken from the surveillance tape at the Shell station were dissimilar to the way he appeared when he was apprehended. He also maintains there were discrepancies in the way he was dressed and the victim's description of the clothing worn by the perpetrator. Defendant further alleges there were no fingerprints linking him to the scene of the crime and that the evidence supports his defense that he was carjacked.

The jury heard all of the evidence, including any inconsistencies in the description of the perpetrator. They heard the victim's testimony both on direct and cross-examination. They also saw the video and still photographs of the perpetrator. They further heard defendant's testimony about how he was carjacked and forced by

20

the perpetrator to drive away from the Shell station. The jury obviously found the victim credible and chose to believe the victim's testimony identifying defendant as the perpetrator of the first degree robbery.

It is the jury's function to determine the weight of the evidence bearing on the defendant's identification. When faced with a conflict in testimony, the trier of fact is free to accept or reject, in whole or in part, the testimony of any witness. In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness' testimony, if believed by the trier of fact, is sufficient support for the requisite factual findings. ...

Viewing the evidence in the light most favorable to the prosecution, we find that a rational trier of fact could have concluded, beyond a reasonable doubt, that defendant was the perpetrator of the crime. Accordingly, the arguments raised by defendant in this assigned error are likewise without merit.

*State v. Scott,* 939 So.2d at 470-71(citations omitted).

This Court does not find that the state court's ruling was contrary to, or an unreasonable application of, clearly established federal law, or otherwise erroneous.

Accordingly, Petitioner's third claim is DENIED.

### 4. STATE COURT'S FAILURE TO MAKE APPELLATE RECORD AVAILABLE TO PETITIONER IN PREPARING A *PRO SE* SUPPLEMENTAL BRIEF

Petitioner's last argument is that the Louisiana Fifth Circuit Court of Appeals erred in not ordering the clerk of court to make available the appellate court record to assist Petitioner in preparing a *pro se* supplemental brief on appeal.  As previously indicated, that court did remand to the trial court for a ruling on the pending motion for reconsideration of sentence.  *State v. Scott*, 939 So.2d at 472.

Petitioner filed a motion requesting permission to file a pro se supplemental brief on direct appeal with the Louisiana Fifth Circuit on April 10, 2006.  Petitioner subsequently filed a writ of mandamus, asking for an order to provide the appellate record in order to assist him in preparing the brief.  The Fifth Circuit issued an order that Petitioner be allowed to file a pro se

supplemental brief by May 25, 2006.  The court did not provide the records or respond to the petition for mandamus.  On June 22, 2006, Petitioner filed a petition for mandamus with the Louisiana Supreme Court seeking supervisory review and an order that he be given the record. The Fifth Circuit rendered a decision on July 25, 2006, and on July 28, 2006, the Louisiana Supreme Court notified Petitioner than his petition for mandamus was being returned to him because the issue had been mooted by the decision.  Petitioner never submitted the *pro se* supplemental brief on appeal.

The United States Supreme Court has held that there is no constitutional right to self-representation on direct appeal from a criminal conviction. *Martinez v. Court of Appeal of California*, 528 U.S. 152, 164 (2000).  When a criminal defendant accepts the assistance of counsel on appeal but then disagrees with his attorney's strategy of preparation of the brief, the defendant is not automatically entitled to file a supplemental *pro se* brief.  *Myers v. Johnson*, 76 F.3d 1330, 1335 (5th Cir. 1996).  By accepting the assistance of counsel, a defendant waives his right to submit a *pro se* brief on appeal.  *Id.*   In this case, Petitioner was represented by counsel on appeal, and the Fifth Circuit provided the record to petitioner's counsel to assist her in preparing the appellate brief.  Petitioner's counsel submitted a competent brief on his behalf.  If there is no constitutional right to file a *pro se* supplemental brief on appeal, there can be no right of access to the record in order to assist in the preparation of such a brief.  This Court does not find that the state court ruling was contrary to, or an unreasonable application of, clearly established federal law, or otherwise erroneous.

Accordingly, Petitioner's fourth claim is DENIED.

## V. CONCLUSION

22

For the reasons stated above, this Court finds that Ben Scott's petition for writ of habeas corpus does not present grounds for the relief requested.   Instead, it appears to this Court that the focus of Petitioner's claims are facts  that were brought out at trial and arguments which, had they been accepted by the trial court or jury, might have altered the outcome of trial.  *Bona fide* issues were fully explored at the trial level, especially with regard to the admissibility of the identifications and statements, and resolved against Petitioner.  The record supports the conclusion that Petitioner received a constitutionally fair trial for purposes of the relief sought.

Accordingly,

IT IS ORDERED that the petition of Ben Scott for writ of habeas corpus under 28 U.S.C. § 2254 is DENIED.

New Orleans, Louisiana, this 31st  day of March, 2011.

HELEN G. BERRIGAN
UNITED STATES DISTRICT JUDGE